Bush *v.* Lehigh Brick Company, Appellant.

Argued October 7, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

The facts are stated in the opinion by FLOOD, J., of the court below, as follows:

Claimant was injured in March 1946 and entered into a compensation agreement with his employer's insurance carrier the following month providing for compensation at the rate of $20 per month. On March 15, 1949, the referee terminated the agreement and awarded $16.15 per week from February 4, 1948,— based upon a finding of 50% partial disability. On March 14, 1950, the referee found that the 50% partial disability continued but that by reason of outside earnings the claimant had a loss in earning power of only $7.11 per week so that compensation was awarded at the rate of $4.74 weekly "to continue until such time as the claimant's disability should cease or change in extent". Compensation was paid at this rate until the end of a 300-week period from the time of the accident. Three months after the end of the 300-week period claimant filed a petition for reinstatement of compensation upon the ground that the award failed to properly compensate him for his disability during the 300-week period. At the hearing upon his petition the referee found that the 50% disability continued until the end of the 300-week period but that the claimant's earnings during 1950 averaged $15.89 and during

1951, $30.06. He concluded that he should have been paid at the rate of $16.15 per week during 1950 and $12.27 per week from January 1, 1951 until January 6, 1952, the end of the 300-week period, and awarded him the difference between these amounts and the $4.74 per week actually paid him during the periods in question with interest at the rate of 6% per annum on the deferred payments. This award was based upon the fact that the claimant's earning capacity was different from that found by the referee in the order of March 14, 1950. Upon appeal to the Workmen's Compensation Board, the Board affirmed the referee's finding that the 50% disability continued until the end of the 300-week period and did not reverse his findings as to the claimant's earnings during the period for which additional compensation had been awarded, but reversed his award upon the ground that he was without authority to award additional compensation since there had been no change in the claimant's disability since 1950 and that the change in earnings since that time were not due to a change in his physical condition but rather to other conditions in no way related to his disability. We have before us an appeal from the decision by the Board.

We think the Board must be reversed upon the authority of *Giannetti v. Seib Co.,* 163 Pa. Superior Ct. 530 (1949). There the court held that since there was an award of 25% disability, the claimant was entitled to receive $3.90 per week for 400 weeks from the date of the injury since the award was never thereafter modified or terminated. The court, through ARNOLD, J., said on page 531, "The claimant could receive $3.90 per week by either of two methods,—the payment of compensation by the defendant, or the receipt by the claimant of equivalent wages during the period." In that case the claimant was not paid the full amount

because credit was given against the award for earnings which he had not actually received during the period. He did not ask to be paid the additional amount until more than a year after the 400-weeks period had expired. The court said: "The referee and the board correctly determined that the question was one of satisfaction and not termination, and that the award was not satisfied".

We have the same situation here. Claimant's 50% disability, under the reasoning of Justice ARNOLD who spoke for the Superior Court in the *Giannetti* case, entitled him to a weekly compensation of $16.15 from March 14, 1950 to the end of the 300-week period. In the court's language in that case he could receive this $16.15 either by payment of compensation or the receipt of equivalent wages. He could also receive it by a combination of both. Until he had received it in one of these ways the award could not be satisfied. Therefore he is entitled to the amount awarded him by Referee Alessandroni in the order of March 2, 1953.

Defendant argues that claimant's earning power was determined by the order of March 14, 1950 and that this is res judicata. He cites certain cases under the 1939 Amendment to Section 306(b) of the Act, 77 PS §512, indicating that earning power under the amended act means not what it usually means at common law but the actual earnings of the claimant, so that since Referee Alessandroni decided what they were in 1950 and since his decision was not appealed from in the statutory time this matter is res judicata. It is quite clear from the *Giannetti* case that the act has not been so interpreted by the Superior Court, which evidently considers the amendment providing that "earning power" as used in Section 306(b) "shall in no case be less than the weekly amount which the employee receives after the accident" as limiting not

the award, but only the amount payable by the employer or insurance carrier. Consequently it gives no prospective effect to a finding as to the amount of the claimant's earnings. These earnings are of concern merely in determining whether or not the award has been satisfied and therefore cannot be determined finally until the period is ended. This leads to the eminently sensible conclusion that a finding as to the amount of earnings before they are earned is not res judicata.

It is also clear from the opinion in the *Giannetti* case that since the change in earnings has nothing to do with the right to compensation but only with the amount thereof that must be paid by the employer or the insurance carrier, the fact that this change is not related to any change in the claimant's disability or physical condition is of no importance.

Defendants seem to assume that this award must be considered res judicata because the referee did not make the award of $16.15 and suspend it as to the difference between that and $4.11 because of the earnings of the claimant during this period. Any error in the form of the award cannot change the result. It is at most an error of law and must not be considered as res judicata. While Mr. Justice ARNOLD had before him in the *Giannetti* case an order which was in the form of a full order with a suspension, it does not appear that the form of this order had any effect upon his decision. His language in that case is a complete answer to the defendant's argument. The court says: "The distinction between earning power (or disability) and earnings must be kept in mind. In the instant case the 'earning power' of this claimant was 25% reduced. But 'earning power,' under the 1939 amendment, is not to be taken as less than the wages the employe receives after the accident. The present claim-

ant received no equivalent wages after March 9, 1943, and continued to suffer a 25% reduction of his 'earning power.'" The opinion then quotes *Holtz v. McGraw & Bindley,* 161 Pa. Superior Ct. 371 (1947) at page 378 "Equivalent wages simply remove the claimant from the compensation rolls of the defendant during the period that the claimant receives such equivalent wages, and neither fixes the amount of the claimant's disability or loss of earning power, . . ." We can see here, as Justice ARNOLD says in the *Giannetti* case, "On this state of the record, and because the claimant had not taken action before the expiration of 400 weeks, the appellants insist that they must be given credit on the award for that which admittedly the claimant did not receive, and that which admittedly they never paid. The mere statement of the proposition demonstrates its injustice." The injustice is not less here. The award was merely improperly stated in that instead of $16.15 per week with a suspension of all amounts above $4.11, the mathematical problem was worked out on the basis of the earnings at the date of the award and the award was made $4.11 per week.

Defendant argues that no appeal lies after the end of the 300-week period, or in the language of the Act, "during the time such . . . award has to run". Section 413 of the Act, as amended; 77 PS 772. But this applies only to petitions grounded upon a change of disability or status of a dependent. We are dealing with neither of these matters here. The point is expressly ruled against the defendant in *Giannetti v. Seib,* supra, at p. 532.

The order of the Board must be reversed. The award of the referee should be reinstated and judgment entered thereon.

*J. Grant McCabe, III,* with him *John B. Martin,* for appellants.

*Alexander F. Barbieri,* for appellee

PER CURIAM, November 15, 1954:
The judgment of the court below is affirmed on the opinion of Judge FLOOD.

Commonwealth ex rel. Hershey, Appellant, *v.* Tees.

Submitted October 5, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

The facts are stated in the opinion, by WISSLER, J., of the court below, as follows: